IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TREDICI ENOTECA, LLC<br><br>      Plaintiff,<br>v.<br>GREGORY DODGE<br><br>      Defendant. | CIVIL ACTION NO. 20-4112 |
| ZAVINO UNIVERSITY CITY, LLC<br><br>      Plaintiff,<br>v.<br>GREGORY DODGE<br><br>      Defendant. | CIVIL ACTION NO. 20-4937 |

## MEMORANDUM OPINION

**Rufe, J.**                                     **July 19, 2021**

  Plaintiffs Tredici Enoteca, LLC ("Tredici") and Zavino University City, LLC ("Zavino"), brought nearly identical actions against Defendant Gregory Dodge alleging claims for Civil RICO, 18 U.S.C. § 1962(c), breach of fiduciary duty, and conversion. Dodge has moved to dismiss the Complaints. For the reasons discussed below, Dodge's motions to dismiss will be denied.

I.   **BACKGROUND**

    A. <u>Factual Allegations</u>[1]

Plaintiffs Tredici and Zavino are Pennsylvania limited liability companies formed for the purpose of owning and operating restaurants in the Center City and University City areas of Philadelphia. Defendant Dodge is the managing member of the Zavino Hospitality Group, LLC ("ZHG"). Beginning in 2012, Dodge "embarked upon a venture to open a string of restaurants" where each restaurant entity was operated by its own limited liability company.[2] Dodge also set up ZHG as a management company in which he held the majority of the Class A membership interests. ZHG provided "high-level management" for each of the restaurants' operating companies and was the member in control of each such restaurant LLC.[3] Plaintiffs assert that this structure was designed by Dodge to guarantee that he would retain control of each individual restaurant LLC as well as the entire enterprise.

Plaintiffs allege that Dodge used his controlling position in ZHG to manipulate their finances and "line his own pocket, pay his personal expenses, and improperly transfer money among the legally-distinct restaurant entities." Plaintiffs further allege that Dodge used ZHG's managerial role to siphon money from each entity, in excess of authorized management fees and legitimate compensable expenses under the ZHG operating agreement. Plaintiffs claim that Dodge diverted money to ZHG in excess of the operating agreement, taking that excess for his

---

[1] Unless otherwise stated, the following facts draw from the individual complaints filed by Plaintiff Tredici and Zavino and are assumed to be true for purposes of the motions to dismiss.

[2] Case No. 20-4112 [Doc. No. 1] ¶ 8; No. 20-4937, [Doc. No. 1] ¶ 8.

[3] Case No. 20-4112 [Doc. No. 1] ¶ 9; No. 20-4937, [Doc. No. 1] ¶ 9.

own personal gain. Plaintiffs also allege that Dodge used his position as controlling member of each entity to take improper distributions directly from each LLC for his own benefit.

Although the underlying claims of Tredici and Zavino are identical, the monetary amount Dodge allegedly siphoned and transferred from each restaurant entity differs, as set forth below.

### 1. Tredici's Claims

Under the operating agreement, ZHG was entitled to receive a management fee from Tredici of no more than 5.5% of its yearly revenue. Tredici alleges that in 2018, 5.5% of its revenue was $133,357, but Dodge caused ZHG to be paid $156,000. Additionally, Tredici alleges that in 2018 Dodge directly took $28,750 from Tredici without justification. In 2019, Tredici alleges Dodge took another $42,750 in "unjustified 'Management Fees.'"[4]

Tredici further claims that Dodge used the restaurant's credit cards to pay for non-business expenses, and to pay off personal expenses. For example, Tredici states that Dodge charged $1,985.70 for personal travel expenses to Tredici's company credit card. Finally, Tredici alleges that in 2018 and 2019 Dodge made unauthorized and "unexplained transfers" from Tredici's bank account in the amount of $77,243.22 and $57,848.87, respectively.[5]

### 2. Zavino's Claims

Under the operating agreement, ZHG was entitled to receive a management fee from Zavino of no more than 5.5% of its yearly revenue. Zavino states that in 2018 and 2019 Dodge exceeded that percentage amount. Additionally, Zavino alleges that from all restaurants managed and controlled by Dodge and ZHG, Dodge received unauthorized benefits in an amount in excess

---

[4] Case No. 20-4112 [Doc. No. 8] at 3.
[5] Case No. 20-4112 [Doc. No. 1] ¶ 20.

of $1,000,000 in 2018 and 2019. Zavino further states that Dodge drew a salary from Zavino during this time even though he was not a Zavino employee.

More specifically, Zavino alleges that between 2017 and 2019 Dodge used the restaurant entities' revenue to make partial repayments of a personal loan he received in 2017.[6] The repayment of this personal loan was facilitated by Dodge taking money out of the accounts of several of the restaurant entities in the amount of $1,754.75. One such payment occurred on December 22, 2017.

Zavino further alleges that in the spring of 2020, Dodge applied for the Paycheck Protection Program ("PPP") loans that were available to businesses during the COVID-19 pandemic. Zavino states that Dodge made numerous false representations in response to specific items on his filing. Dodge allegedly claimed on the PPP application that the proceeds were necessary to support the ongoing operations of Zavino, and that the loans were to be used to pay payroll, rent, and utility. Zavino claims that these representations were knowingly false because at the time Dodge filed this application, the restaurant was closed and had no imminent plan to reopen, even if the requested loan was obtained. Dodge allegedly received a $223,700 PPP loan, but kept the restaurant closed, laid off employees, and did not make any rent or utility payments.

Both Plaintiffs allege that to effectuate these alleged fraudulent transfers Dodge, and his employees, used interstate means of communication including mail and wire communications. Plaintiffs also allege that Dodge used interstate wires to complete the alleged fraudulent transfers through the internet and bank websites and that Dodge and his agents used the QuickBooks

---

[6] No. 20-4937, [Doc. No. 1] ¶ 20.

bookkeeping software to keep records of all the fraudulent transfers and to make journal entries in an attempt to justify the unauthorized transaction.

## II. LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[7] The question is not whether the plaintiff ultimately will prevail but whether the complaint is "sufficient to cross the federal court's threshold."[8] In evaluating a challenged complaint, a court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief."[9] However, the Court disregards "threadbare recitals of the elements of a cause of action, legal conclusions, and conclusory statements."[10]

## III. DISCUSSION

### A. Civil RICO

In Count I of each Complaint, Plaintiffs allege that Dodge violated 18 U.S.C. § 1962(c).[11] To state a Civil RICO claim, a plaintiff must plausibly allege the following elements: "(1)

---

[7] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)); *see also Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 46 (2011).

[8] *Skinner v. Switzer*, 562 U.S. 521, 530 (2011) (citations omitted).

[9] *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)) (internal quotation marks omitted).

[10] *James v. City of Wilkes-Barre*, 700 F.3d 675, 681 (3d Cir. 2012).

[11] Plaintiffs' claims are brought under § 1964(c), which allows a private right of action under the RICO statute.

conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity."[12] A pattern of racketeering activity requires at least two predicate acts of racketeering that "are related and that amount to or pose a threat of continued criminal activity."[13] Predicate acts of racketeering include federal mail fraud, 18 U.S.C. § 1341, federal wire fraud, 18 U.S.C. § 1343, and bank fraud, 18 U.S.C. § 1344.[14]

Where a plaintiff asserts a RICO violation that stems from the predicate acts of mail and wire fraud, a plaintiff must plead fraud with particularity as required by Federal Rule of Civil Procedure 9(b).[15] Plaintiffs can satisfy this burden by pleading the "date, place or time of the fraud, or through alternative means of injecting precision and some measure of substantiation into their allegations of fraud."[16] "Put another way, the 'who, what, when and where details of the alleged fraud' are required."[17]

Dodge argues that Plaintiffs fail to plead mail and wire fraud—the predicate acts asserted in support of the RICO claims—with sufficient particularity. Dodge further argues that Plaintiffs have not alleged facts to support that he engaged in a "pattern of racketeering activity."

---

[12] *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985). Dodge's motion does not challenge the allegation that ZHG constitutes an "enterprise" within the meaning of RICO.

[13] *Bonavitacola Elec. Contractor, Inc. v. Boro Developers, Inc.*, 87 F. App'x 227, 231 (3d Cir. 2003) (quoting *H.J., Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 239 (1989)).

[14] *See* 18 U.S.C. § 1961(1); *Lum v. Bank of Am.*, 361 F.3d 217, 223 (3d Cir. 2004) (citing 18 U.S.C. § 1961(1)).

[15] *DiGiglio v. U.S. Xpress, Inc.*, 293 F.Supp.3d 522, 527 (E.D. Pa. 2018). Rule 9(b) states: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).

[16] *Lum*, 361 F.3d at 224 (internal quotation marks and citations omitted).

[17] *DiGiglio,* 293 F.Supp.3d at 527 (citation omitted).

1. <u>Predicate Acts</u>

Plaintiffs allege mail and wire fraud as the predicate acts supporting their RICO claim.[18] To plead mail or wire fraud, a plaintiff must show "(1) a scheme to defraud, (2) use of the mail or interstate wires to further that scheme, and (3) fraudulent intent."[19] The communication made through the mails and wires does not have to be a necessary element of the fraudulent scheme, but it must at least be "incident to an essential part of the scheme."[20] The scheme must involve a "fraudulent misrepresentation or omission reasonably calculated to deceive persons of ordinary prudence and comprehension."[21]

Both Tredici and Zavino allege predicate acts in a sufficient manner to move past the motion to dismiss. Plaintiffs allege that Dodge used the mail and interstate wires to perpetrate fraudulent transfers and transactions and identify numerous specific, unauthorized interstate mail and wire transactions siphoning money for Dodge's personal gain. For example, Plaintiffs allege Dodge knowingly ordered his agent to accept—and transfer to him—"management fees" from Plaintiffs in an amount exceeding the 5.5% threshold permitted under the operating agreements.

---

[18] Zavino also alleges an additional enumerated predicate act of bank fraud, pursuant to 18 U.S.C. § 1344, for Dodge making knowingly false representations while signing the official forms which required him to expressly acknowledge that a false statement in the PPP application would subject him to various criminal penalties. Case No. 20-4937 ¶ 23 [Doc. No. 1]. Zavino alleges Dodge made false representations in his PPP application by stating that the requested funds were for "Payroll" and were necessary to support the ongoing operations of the business, and that the proceeds of the PPP loans were to be used to pay payroll, rent (or mortgage interest) and utilities. These representations were allegedly made despite the fact that Zavino had already closed, and had no imminent plans to reopen, even upon receipt of the requested loan, and the fact that rent was already delinquent. Additionally. although not pleaded in Tredici's Complaint, it also argues Dodge committed the predicate act of bank fraud in obtaining a PPP loan on its behalf. Resp. Mot. to Dismiss, Case No. 20-4112 [Doc. No. 8] at n.2.

[19] *Bonavitacola*, 87 F. App'x at 231 (citing *United States v. Pharis*, 298 F.3d 228, 233 (3d Cir. 2002)).

[20] *Tabas v. Tabas*, 47 F.3d 1280, 1294 n.18 (3d Cir. 1995) (citations omitted).

[21] *Walther v. Patel*, No. 10-706, 2011 WL 382752, at *6 (E.D. Pa. Feb. 4, 2011) (quoting *Lum*, 361 F.3d at 223 (citations omitted)).

Dodge also allegedly, over the course of numerous years, instructed his agent via "phone and/or email" to make illicit payments effectuated through unauthorized interstate wire transactions. Plaintiffs further plead facts identifying the software Dodge used to create journal entries to justify and hide the fraudulent transfers.[22] These averments include the exact monetary amounts of the transfers, the individuals Dodge used to effectuate the transactions, and the exact dates of the transactions.

Although courts have consistently rejected contract and tort claims brought under the guise of a RICO predicate act,[23] Plaintiffs are not merely refashioning a contract dispute or negligence claim as a RICO violation. Instead, they allege specific examples of Dodge's knowingly false representations and unauthorized actions that evince a comprehensive and widespread scheme to defraud.[24]

### 2. Pattern of Racketeering Activity

Dodge also argues that the alleged facts do not support a finding of a "pattern of racketeering activity." A pattern of racketeering activity requires two or more predicate acts of

---

[22] *See, e.g., Tredici,* Resp. to Mot. to Dismiss, No. 20-4112 [Doc. No. 8] at 8 ("Defendant Dodge instructed Moyer and/or his agents via phone and/or email to make journal entries purporting to justify the direct payments to him as "Management Fees" in order to avoid detection of the payments being entirely unjustified. These journal entries were effectuated over the internet, as Plaintiff's QuickBooks journal was stored entirely via the wires online.").

[23] *E.g., Kolar v. Preferred Real Est. Invs., Inc.*, 361 F. App'x 354, 363–64 (3d Cir. 2010) ("These allegations set forth disputes sounding in contract. Kolar cannot successfully transmute them into RICO claims by simply appending the terms 'false' and 'fraudulent.'" (citation omitted)); *Walther*, 2011 WL 382752, at *6 ("[T]hat complaint sounds in negligence or breach of contract, and Walther cannot convert it to fraud by labeling the statement a 'misrepresentation.'" (citation omitted)).

[24] The Court also recognizes the Supreme Court's instruction that "RICO is to be read broadly." *Tabas*, 47 F.3d at 1297 (quoting *Sedima*, 473 U.S. at 497 (internal quotation marks omitted)).

racketeering within a ten-year period,[25] and a plaintiff must show that the "racketeering predicates are related, and that they amount to or pose a threat of continued criminal activity."[26]

Predicate acts are related if they "have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events."[27] "'Continuity' is both a closed- and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition."[28] Closed-ended continuity refers to a "series of related predicates extending over a substantial period of time."[29] "Where the predicate acts occur close together in time, a plaintiff may prove open-ended continuity by showing that the commission of the acts is the entity's 'regular way of doing business' or that the 'racketeering acts themselves include a specific threat of repetition extending indefinitely into the future.'"[30]

Dodge argues that Plaintiffs have failed to establish continuity. However, both cases allege misrepresentations and fraud in connection with various financial transfers and the siphoning of restaurant funds that occurred over multiple years. The similarity of Dodge's alleged actions and of Tredici and Zavino's alleged claims is sufficient to demonstrate, for purposes of a motion to dismiss, that the commission of fraud was Dodge and ZHG's "regular

---

[25] 18 U.S.C. § 1961(5).

[26] *H.J. Inc.*, 492 U.S. at 239.

[27] *Id.* at 240.

[28] *Id.* at 241.

[29] *Id.* at 242.

[30] *O'Keefe v. Ace Restaurant Supply, LLC,* No. 11-1330, 2016 WL 127566, at *4 (E.D. Pa. Jan. 12, 2016).

way of doing business."[31] The Court can infer from the allegations in the Complaints that Dodge's actions were not isolated, but rather a calculated scheme designed to defraud the restaurant LLCs for his personal benefit.[32] Plaintiffs also adequately plead closed-ended continuity because the alleged fraud is alleged to have occurred over numerous years.[33] Accordingly, Plaintiffs' allegations regarding continuity and a pattern of racketeering are sufficient at this stage of the litigation.

### B. Breach of Fiduciary Duty

In Count II, Plaintiffs allege that Dodge, individually and as controlling member of ZHG, breached a fiduciary duty to Plaintiffs and their members, including a duty to act in the best interest of Plaintiffs and their members. Dodge argues that Plaintiffs cannot allege that he undertook or breached a duty because there was no inherent fiduciary relationship between him and Plaintiffs. He contends that ZHG and both Tredici and Zavino were merely "contracting parties who stand on equal footing in the eyes of the law."[34]

Under Pennsylvania law, a plaintiff must allege not only a fiduciary duty, but also "(1) that the defendant negligently or intentionally failed to act in good faith and solely for the benefit of plaintiff in all matters for which he or she was employed; (2) that the plaintiff suffered injury;

---

[31] *Cf. Walther*, 2011 WL 382752, at *8 (finding no continuity where plaintiff did not allege that defendants perpetrated the predicate acts against anyone besides the plaintiff); *Holst v. Oxman*, No. 05-0220, 2006 WL 724520, at *5 (E.D. Pa. Mar. 17, 2006) (same).

[32] *See Tabas*, 47 F.3d at 1293 (finding continuity would exist where a "legitimate" businessperson regularly conducts his or her business through illegitimate means).

[33] The Third Circuit has held that conduct lasting less than twelve months does not establish closed continuity. *Tabas*, 47 F.3d at 1293 (citing cases); *Darocha v. Crusader Sav. Bank*, No. 94-7264, 1995 WL 118208, at *2 (E.D. Pa. Mar. 10, 1995).

[34] Case No. 20-4112 [Doc. No. 7] at 12–13; Case No 20-4937 [Doc. No. 6] at 12–13.

10

and (3) that the agent's failure to act solely for the plaintiff's benefit . . . was a real factor in bring[ing] about plaintiff's injuries."[35]

Plaintiffs argue that Dodge assumed a fiduciary duty to Plaintiffs as the controlling member of ZHG, which effectively gave Dodge financial control over both Tredici and Zavino. The allegations in the Complaints support an inference that Dodge had sole decision-making authority to write checks, pay venders, and make financial decisions for the restaurants owned and operated by ZHG, and failed to act for the benefit of these entities. Plaintiffs' allegations, taken as true, are sufficient to state a claim, and without a developed factual record, the Court cannot determine that Dodge had no fiduciary duty to Plaintiffs.

### C. Conversion

In Pennsylvania, "[c]onversion is a tort by which the defendant deprives the plaintiff of his right to a chattel or interferes with the plaintiff's use or possession of a chattel without the plaintiff's consent and without lawful justification."[36] To state a claim, a plaintiff must allege that the defendant wrongfully took property from the plaintiff.[37]

Dodge argues that the Complaints fail to plead "that Dodge utilized monies beyond what he was clearly entitled to for personal expenses or things unrelated to the necessary operations of the restaurant entities."[38] Taking the factual allegations of the Complaints as true, Tredici and Zavino have specifically alleged numerous ways in which Dodge converted monies and property. As discussed above, the Complaints outline the transactions and transfers at issue and

---

[35] *Dinger v. Allfirst Fin., Inc.,* 82 F. App'x 261, 265 (3d Cir. 2003).

[36] *Pittsburgh Const. Co. v. Griffith*, 834 A.2d 572, 581 (Pa. Super. Ct. 2003).

[37] *Id.*

[38] Case No. 20-4112 [Doc. No. 7] at 15; Case No 20-4937 [Doc. No. 6] at 15.

the exact amount of money Dodge allegedly converted. Additionally, Plaintiffs allege that Dodge deprived them of property in his failure to turn over books and records relating to the LLCs' bank accounts.

Whether Dodge had rightful possession over the alleged converted funds and property cannot be determined without a developed record. Plaintiffs' allegations are sufficient to support a plausible claim for conversion under Pennsylvania law.

IV.    **CONCLUSION**

Both Tredici and Zavino have alleged facts sufficient to support the causes of action asserted. Defendant's motions to dismiss will be denied in their entirety. An order will be entered.